IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-CV-515-KFP |
| | ) | |
| CORPORAL WALTON; | ) | |
| DEPUTY ELLER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Corporal Walton and Deputy Eller's Motion to

Dismiss. Doc 15. The motion is fully briefed and ripe for review. Upon consideration of

the parties' filings and applicable case law, the Court finds the Motion to Dismiss is due to

be GRANTED.

**I.     STANDARD OF REVIEW**

When evaluating a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), a court must take the facts alleged in the complaint as true and construe them in

the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22

(11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief," and each factual allegation should be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). To "state a claim to relief that is plausible on its face[,]" a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (first quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.*

## II.    BACKGROUND

Plaintiff William Norton brought this claim against Defendants Corporal Walton and Deputy Eller on August 14, 2024. Doc. 1. In the Complaint, Norton alleges that "[o]n or about June 19, 2024," he was inside an abandoned mobile home. Doc. 1 ¶ 8. He acknowledges that at this time he had an outstanding warrant for his arrest. Doc. 1 ¶ 9. He claims that while he was inside the mobile home he "heard Corporal Walton and Deputy Eller state that they were sending a canine in . . . if [he] did not voluntarily exit the mobile home." Doc. 1 ¶ 10.

Norton alleges that after this statement he heard the dog enter the home after which "he yelled to Corporal Walton and Deputy Eller that he surrenders," and then he "pleaded with them not to let [the dog] bite him." Doc. 1 ¶11. Norton alleges that the dog approached

him, sniffed him, and then exited the room. Doc. 1 ¶ 12. Norton says he was unarmed throughout this encounter. Doc. 1 ¶ 13.

Norton alleges that Corporal Walton and Deputy Eller then put him face down on the ground to handcuff him, and that while he was "subdued on the ground and under the control" of the two officers, "he heard Corporal Walton speak a word that he did not recognize as English," after which the dog "began to attack him" and inflicted multiple injuries to his right thigh. Doc. 1 ¶¶ 14–18. Norton needed to be taken to the hospital and received stitches for the injuries. Doc. 1 ¶ 18. Norton states that he continues to suffer from emotional and physical pain due to this injury.

## III.    DISCUSSION

Norton brought two claims pursuant to 42 U.S.C. § 1983. In Count I, Norton alleges Corporal Walton used excessive force in violation of the Fourth and Fourteenth Amendments. Doc. 1 ¶ 20–26. In Count II, Norton alleges Deputy Eller acted objectively unreasonable and with deliberate indifference and failed to intervene during the attack. Doc. 1 ¶ 28. Defendants argue that they are shielded from Norton's claims by qualified immunity. The Court will address whether Defendants are entitled to qualified immunity for each of Norton's claims against them.

### A.    Qualified Immunity Legal Standard

"Questions of qualified immunity should be resolved at the earliest possible stage in the litigation. A district court should therefore grant the defense of qualified immunity on a motion to dismiss if the complaint fails to allege the violation of a clearly established constitutional right." *Dalrymple v. Reno*, 334 F.3d 991, 994–95 (11th Cir. 2003). "Under

the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baker v. City of Madison*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To analyze a defendant's defense of qualified immunity, a court must "first consider whether the defendant government official has proved that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id.* at 1278 (quoting *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294–95 (11th Cir. 1998)). "The inquiry is two-fold: '[the court] ask[s] whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). After the defendant makes this showing, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Baker*, 67 F.4th at 1278 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Id.* at 1278 (quoting *Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022)). The plaintiff must show that the "[d]efendant violated a constitutional right" and "that the violation was clearly established." *Id.* (internal quotes removed). The court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234

(11th Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* (alteration in original) (quoting *Saucier*, 533 U.S. at 201). Essentially, the plaintiff is tasked with showing "that qualified immunity is not appropriate." *Id.* Upon establishing these two elements, the official loses the qualified immunity defense. *Baker*, 67 F.4th at 1278.

Norton alleges Corporal Walton and Deputy Eller were performing the functions of their job when the attack occurred because the canine unit was present while the officers were carrying out a warrant. Doc. 1 ¶¶ 3, 4, 6, 9, 10, 23, 28. Defendants argue that because Norton has conceded that Defendants' actions were taken in the course of their employment and that because these actions are job-related, they have satisfied their initial burden in showing that that they were in the course of pursuing a "job-related function" and that the means used "were within [their] power to utilize." Doc. 16 at 6 (citing *Carruth*, 942 F.3d at 1054).

The record establishes that the alleged constitutional violation occurred when the officials were acting within the scope of their discretionary authority. The alleged use of force occurred during an arrest that was being carried out pursuant to a lawful search warrant. Doc. 1 ¶¶ 9–10. Determining "that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery Cnty. Bd. Of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998). Defendants have made this showing and therefore met their burden on qualified immunity. *Carruth*, 942 F.3d at 1054.

**B.      Norton has not shown that Corporal Walton's alleged violation of his Fourth Amendment right was clearly established.**

Norton alleges Corporal Walton's "release of a police dog with the knowledge or intent that the dog will attack a citizen is a use of force" that was "excessive, unwarranted, [and] unlawful" in violation of the Fourth Amendment. Doc. 1 ¶¶ 21–22. Norton alleges that Corporal Walton knew the canine would attack Norton. Doc. 1 ¶ 22. He further alleges that he was not in flight, nor did the officers have knowledge as to whether Norton was armed, nor did Norton pose an immediate threat to the officers' safety. Doc. 1 ¶ 22. Norton further alleges that Corporal Walton "intentionally and/or willfully delayed in restraining or disengaging the dog" and that the use of the canine "was contrary to the standards and accepted practices of police departments." Doc. 1 ¶¶ 22, 24.

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)). "The test of reasonableness under the Fourth Amendment" is not a mechanically applied test and instead requires an assessment of "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Some of the facts and circumstances assessed include (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "A genuine excessive force claim relates to the manner in which an arrest was carried out,

independent of whether law enforcement had the power to arrest." *Hadley*, 526 F.3d 1329

(internal citations removed).

Accepting Norton's allegations as true, he posed no immediate threat to the officers'

safety because he was not armed, he had surrendered, and he was subdued lying on the

ground. Norton was also demonstrably not actively resisting arrest or fleeing. Yet, Corporal

Walton released a canine on Norton while he was subdued. Thus, an application of force,

such as a canine unit, was not necessary. *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th

Cir. 2009) ("[I]t would have been objectively unreasonable for [the defendant officer] to

allow the canine to continue attacking [the plaintiff arrestee] *after* he was secured."); *see*

*also Hadley*, 526 F.3d at 1330 ("Our cases hold that gratuitous use of force when a criminal

suspect is not resisting arrest constitutes excessive force."). Under established Eleventh

Circuit precedent, Norton has pleaded facts that plausibly allege a constitutional violation

occurred.[1]

---

[1] Separately, Defendants argue that Norton's complaint fails because he prefaces the complaint by stating that his allegations are "based on information and belief," the Court finds this argument unpersuasive. While Defendants correctly note that claims "based upon information and belief are not entitled to any presumption of the truth without support from other factual details in the complaint," (Doc. 16 at 9 (citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013))), Norton did allege factual details in the Complaint. "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible." *Bouton v. Ocean Props.*, 201 F. Supp. 3d 1341, 1347 (S.D. Fla. 2016) (quoting *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs. Ins.*, 2013 U.S. Dist. LEXIS 190063, at *3 (S.D. Fla. Mar. 20, 2013)). Plaintiff cites to specific facts concerning the alleged actions of Defendants that make culpability plausible.

Defendants attempt to do away with Norton's entire complaint by framing the phrase "information and belief" as magic words that would require the court to dismiss the entire complaint. While it is true that "for purposes of a Rule 12(b)(6) motion to dismiss, the Court does not have to take as true allegations based merely 'upon information and belief,'" *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (quoting Mann, 713 F.3d at 1315), it is also true that the Court is not barred from considering the claim. *See Associated Indus. Ins. Co.*, 2013 U.S. Dist. LEXIS 190063, at *7–8 (finding that where defendant argued "[p]laintiff's excessive use of the phrase 'upon information and belief' render[ed] valueless or faulty the 80

The Court must next consider "whether the law clearly established the relevant conduct as a constitutional violation at the time that Defendant Officers engaged in the challenged acts." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). In Norton's complaint, he fails to present any argument that his Fourth Amendment right to be free from excessive force was clearly established.

Courts "look for 'fair warning' to officers that the conduct at issue violated a constitutional right." *Id.* at 851 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)). Fair warning can be established in three ways: (1) "a plaintiff may point to binding precedent that is materially similar"; (2) "a plaintiff may invoke a 'broader, clearly established principle' that he asserts 'should control the novel facts [of the] situation'"; (3) "when the defendant's conduct 'lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Id.* at 852 (alterations in original) (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012)).

Defendants argue that Norton has failed to satisfy the "clearly established" prong. In looking to cases that can help guide the Court in assessing whether "fair warning" has been established, the Court turns to *Priester v. City of Riviera Beach*. Priester was a suspect of a minor offense and at the time of his arrest the officers had no reason to suspect "Priester was armed or that he otherwise posed an immediate threat to the officers or anyone else."

---

paragraphs in which it is used," that "[t]he [c]ourt will not dismiss the [c]omplaint because of the use of the term 'upon information and belief.'"). Where the complaint "contain[s] sufficient factual matter" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the complaint is not merely based on "information and belief," but satisfies the pleading standard under *Twombly*.

*Jones*, at 853 (citing *Priester*, 208 F.3d. 919, 927 (11th Cir. 2000)). Further, while "Priester originally fled the officers," he eventually submitted to them. *Id.* (citing *Priester*, 208 F.3d at 923, 927). It was at the point that Priester was subdued, that "the officer who controlled the police dog nonetheless ordered his dog to attack and bite Priester for at least two minutes and threatened to kill Priester when Priester tried to resist the attack." *Id.* (citing *Priester*, 208 F.3d at 927). "Priester suffered fourteen puncture wounds to his legs." *Id.* (citing *Priester*, 208 F.3d at 924). The Eleventh Circuit "easily concluded that the officer and his officer colleague who failed to intervene violated Priester's Fourth Amendment right to be free from the use of excessive force." *Id.* (citing *Priester*, 208 F.3d at 927–28).

While some of the facts pleaded can be analogized to the *Priester* case, such as Norton's allegations that he was subdued, submitted to officers, and was bitten by a dog, Norton has not pleaded facts about the duration of the attack or anything akin to the facts in the *Priester* case concerning the officer's threat to kill. Norton alleges that after the officer spoke a word he did not understand, the dog then bit him. These facts are not sufficiently analogous to the *Priester* case, and thus reflect a scenario that does not rise to a level that Eleventh Circuit precedent would find sufficient to show that Norton's alleged constitutional right was clearly established at the time the situation unfolded. Thus, Norton has not "point[ed] to binding precedent that is materially similar," *Jones*, 857 F.3d at 852.

Further, he alleges in his complaint and in his responsive brief, highly generalized claims that would require the Court to make an inference that by enduring an attack committed by a dog after an unintelligible word was spoken, that Norton has satisfied the "clearly established" prong. This inference would run in contrast to established precedent

9

as "the Supreme Court has repeatedly instructed [courts] that 'clearly established law should not be defined at a high level of generality' and must instead be 'particularized to the facts of the case.'" *Jones*, 857 F.3d at 854 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Just because "the Fourth Amendment protects against the use of excessive force during an arrest does not provide an officer with any guidance as to what constitutes an excessive use of force." *Id.* at 854–55. Just stating a general principle "is not the type of 'broader, clearly established principle [that] should control the novel facts [of the] situation' here." *Id.* at 855 (alterations in original) (quoting *Loftus*, 690 F.3d at 1204–05).

Finally, while *Priester* does offer guidance into an arrest involving an excessive use of force in the context of a canine bite, here, Norton has not alleged facts that show "Defendants' actions in this case 'lie[] so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official[.]'" *Id.* at 855 (first and second alterations in original) (quoting *Loftus*, 690 F.3d at 1205). Stated differently, the chain of events Norton describes is not sufficiently analogous to *Priester* so as to create the inference that these events by their nature are "at the core" of what is prohibited by the Fourth Amendment.

Taking the above into account, Norton has not satisfactorily established that Defendants had "fair warning" that his constitutional right was clearly established at the time of the alleged violation. *Jones*, 857 F.3d at 851. For these reasons, the Court finds that while Norton has pleaded facts that plausibly establish a violation of his constitutional rights, he has not pleaded facts that establish that the right was clearly established. Thus,

Corporal Walton is entitled to qualified immunity, and the Motion to Dismiss as it pertains

to Norton's Fourth Amendment claim against Corporal Walton is due to be granted.[2]

### C.    Norton has not shown that Deputy Eller failed to intervene.

Norton alleges that Deputy Eller failed to intervene in the use of force when he was

present, observed the attack, "knew or should have known that the force being used on Mr.

Norton was excessive and unreasonable," and was "in a position to intervene." Doc. 1

¶¶ 29–31. Defendants argue that "the factual underpinning for Defendant Eller's alleged

failure to intervene to stop a canine attack is blatantly missing" and that the allegations are

merely conclusory. Doc. 16 at 15.

As noted above, Defendants have established that their actions carrying out the

arrest were within their discretionary function as officers. The Court is now tasked with

assessing, in the light most favorable to Norton, whether "the facts alleged show the

officer's conduct violated a constitutional right" and "whether the right was clearly

established" with respect to Deputy Eller's alleged failure to intervene. *Gonzalez*, 325 F.3d

at 1234.

---

[2] In Count I, Norton also alleges that Corporal Walton's release of the dog constituted a violation of the Fourteenth Amendment. Doc. 1 ¶¶ 21–22. Defendants correctly argue the Fourteenth Amendment is inapplicable to this claim as the alleged constitutional violations occurred during the course of an arrest. Doc. 16 at 14. Norton's reply did not address this argument; he only responded to Defendants' Fourth Amendment argument. Doc. 21 at 9–12. "Failure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Additionally, "[a]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). It is undisputed that the claim of excessive force alleged in Count I occurred during an arrest. Thus, to the extent Norton asserts the excessive force claim under the Fourteenth Amendment, Defendants' Motion to Dismiss Count I is due to be granted.

"If a police officer, whether supervisory or not, fails or refused to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester*, 208 F.3d at 924. "The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1272 (11th Cir. 2021) (citing *Priester*, 208 F.3d at 927).

Here, Norton alleged sufficient facts to demonstrate that Deputy Eller was present during a constitutional violation. However, the alleged facts are not sufficient to show that Deputy Eller was in a position to intervene. Norton alleged that during the time he was subdued, a single (unrecognizable) word was spoken by Corporal Walton and the dog began to attack him; this single word was not preceded by any type of warning. Doc. 1 ¶¶ 15–16. Further, while Norton alleges he was bitten "repeatedly" requiring nine stitches to his right thigh (Doc. 1 ¶ 17–18), Norton pleaded no facts concerning how long the attack lasted.

In *Priester*, the Eleventh Circuit found that when two officers were present during an arrest and one officer "ordered and allowed his dog to attack and bite Plaintiff" while allowing the attack to go on "for at least two minutes," that Priester satisfactorily pleaded facts showing the other officer's failure to intervene and that "no particularized case law was necessary for a reasonable police officer to know that, on the facts of this case and

12

given the duty to intervene was clearly established, he should have intervened." *Priester*, 208 F.3d at 927.

Norton has not shown Deputy Eller had the ability to intervene in the alleged attack because he pleaded facts that the attack was initiated quickly and "without [] any warning," Doc. 1 ¶ 16, and has not alleged any facts related to the length of time of the attack that would support whether Deputy Eller even could intervene. The Eleventh Circuit has held that officers had the ability to intervene where a canine attack went on for a clear amount of time and was preceded by a spoken warning and threat. *Priester*, 208 F.3d at 927. Norton has pleaded no facts that illustrate any form of warning preceded the alleged attack, and he has not pleaded the duration of the alleged events leading up to or during the attack. Thus, the Court cannot infer, based on his presence alone, that Deputy Eller had the ability or opportunity to intervene. On these facts, there is no clearly established right.

Thus, taking all the facts and inferences in favor of Norton, Deputy Eller's presence is not enough to overcome the defense of qualified immunity on Norton's failure to intervene claim.

## IV.    CONCLUSION

For the reasons stated above, it is ORDERED that Defendants' Motion to Dismiss is GRANTED and

1. Norton's Fourth Amendment excessive force claim in Count I is dismissed without prejudice.

2. Norton's Fourteenth Amendment claim in Count I is dismissed with prejudice.

3. Norton's failure to intervene claim in Count II is dismissed without prejudice.

13

The Clerk of the Court is DIRECTED to close this case.

DONE this 18th day of February, 2025.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE